Laurence M. Rosen, Esq. (SBN 219683)
THE ROSEN LAW FIRM, P.A.
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER MENDITTO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SUPER MICRO COMPUTER, INC., CHARLES LIANG, and DAVID WEIGAND<br><br>Defendants. | Case No:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Christopher Menditto, individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, alleges in this Complaint the following upon knowledge with respect to his own acts, and upon facts obtained through an investigation conducted by his counsel, which included, inter alia: (a) review and analysis of relevant filings made by Super Micro Computer, Inc. ("SMCI" or the "Company") with the United States Securities and Exchange Commission (the "SEC"); (b) review and analysis of Defendants' public documents and press releases; and (c) information readily obtainable on the Internet. Plaintiff believes that further substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery. Most of the facts supporting the allegations contained herein are known only to Defendants (defined below) or are exclusively within their control.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## NATURE OF THE ACTION

1. This is a class action on behalf of all persons and entities, who purchased or otherwise acquired publicly traded SMCI securities between August 31, 2023, and August 28, 2024, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 27 of the Exchange Act (15 U.S.C. § 78aa).

4. Venue is proper in this Judicial District pursuant to Section 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered this district and the Company's headquarters are located in this district.

5. In connection with the acts, conduct and other wrongs alleged herein, Defendants either directly or indirectly used the means and instrumentalities of interstate commerce, including but not limited to the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased SMCI securities during the Class Period and was economically damaged thereby.

7. Defendant SMCI is a Silicon Valley-based provider of computing platforms.

8. SMCI is incorporated in Delaware, and its head offices are located at 980 Rock Avenue, San Jose, CA 95131.

9. SMCI common stock trades on the NASDAQ Global Select Market (the "NASDAQ") under the ticker symbol "SMCI."

10. Defendant Charles Liang ("Liang") has served as the Company's President, Chief Executive Officer ("CEO"), and Chairman of the Board since the Company's inception in September of 1993.

11. Defendant David Weigand ("Weigand") has served as the Company's Chief Financial Officer ("CFO") since February 21. He previously served as the Company's Chief Compliance Officer.

12. Defendants Liang and Weigand are collectively referred to herein as the "Individual Defendants."

13. Each of the Individual Defendants:

    (a) directly participated in the management of the Company;

    (b) was directly involved in the day-to-day operations of the Company at the highest levels;

    (c) was privy to confidential proprietary information concerning the Company and its business and operations;

    (d) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

    (e) was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

    (f) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

    (g) approved or ratified these statements in violation of the federal securities laws.

14. The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

15. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to SMCI under *respondeat superior* and agency principles.

16. Defendant SMCI and the Individual Defendants are collectively referred to herein as "Defendants."

**SUBSTANTIVE ALLEGATIONS**

17. SMCI, a technology company based in Silicon Valley, describes itself as a provider of accelerated compute platforms. It sells computer equipment to buyers who utilize the equipment in data storage and server systems.

18. On August 28, 2023, the Company filed with the SEC its Annual Report on Form 10-K for the fiscal year ended June 30, 2023 (the "2023 Annual Report"). Attached to the 2023 Annual Report were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Liang and Weigand attesting to the accuracy of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

19. In the 2023 Annual Report, the Company stated the following regarding its controls and procedures:

> Management, including our CEO and CFO, assessed our internal control over financial reporting as of June 30, 2023. In making this assessment, management used the criteria set forth by the Committee of Sponsoring Organizations of the Treadway Commission in its Internal Control - Integrated Framework (2013) (the "COSO Framework"). Based on this assessment, management has concluded that our internal control over financial reporting was effective as of June 30, 2023, to provide reasonable assurance regarding the reliability of financial reporting and preparation of consolidated financial statements in accordance with U.S. GAAP.

20. The statement in ¶ 19 was materially false and misleading because the Company's internal controls over financial reporting at that time were not effective.

21. The 2023 Annual Report contains a section titled "*Item 13. Certain Relationships and Related Transactions and Director Independence*."

22. While disclosing some other related party transactions, *Item 13* omits mention of the material related party transactions discussed in this complaint.

23. The statements contained in *Item 13* of the 2023 Annual Report were materially false and misleading because they failed to disclose the existence of multiple related party transactions.

24. The failure to adequately disclose material related party transactions also rendered the Annual Report materially false and misleading because Generally Accepted Accounting Principles ("GAAP"), and SEC rules, require the disclosure of material related party transactions in financial

statements. Financial statements that do not comply with GAAP are presumed to be materially false and misleading.

25. On November 3, 2023, the Company filed with the SEC its 10-Q for the first quarter ended September 30, 2023 (the "1Q24 10-Q").

26. The 1Q24 10-K stated as follows: "There were no changes in our internal control over financial reporting during the quarter ended December 31, 2023, that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting."

27. The 1Q24 10-Q disclosed certain material related party transactions but is materially false and misleading as it failed to disclose the existence of multiple related party transactions.

28. The failure to adequately disclose material related party transactions also rendered the SEC filing materially false and misleading because GAAP and SEC rules, require the disclosure of material related party transactions in financial statements. Financial statements that do not comply with GAAP are presumed to be materially false and misleading

29. On February 2, 2024, the Company filed with the SEC its 10-Q for the fiscal quarter ended December 31, 2023 (the "2Q24 10-Q").

30. The 2Q24 10-Q stated as follows: "There were no changes in our internal control over financial reporting during the quarter ended September 30, 2023, that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting."

31. The 2Q24 10-Q disclosed certain material related party transactions but is materially false and misleading as it failed to disclose the existence of multiple related party transactions.

32. The failure to adequately disclose material related party transactions also rendered the SEC filing materially false and misleading because GAAP and SEC rules, require the disclosure of material related party transactions in financial statements. Financial statements that do not comply with GAAP are presumed to be materially false and misleading

33. On May 6, 2024, the Company filed with the SEC its 10-Q for the fiscal quarter ended March 31, 2024. (the "3Q24 10-Q).

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

34. The 3Q24 10-Q stated as follows: "There were no changes in our internal control over financial reporting during the quarter ended March 31, 2024, that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting."

35. The 3Q24 10-Q disclosed certain material related party transactions but is materially false and misleading as it failed to disclose the existence of multiple related party transactions.

36. The failure to adequately disclose material related party transactions also rendered the SEC filing materially false and misleading because GAAP and SEC rules require the disclosure of material related party transactions in financial statements. Financial statements that do not comply with GAAP are presumed to be materially false and misleading

37. The statements in ¶¶ 26, 30, and 34 were materially false and misleading because the Company did not maintain adequate internal control over financial reporting.

## THE TRUTH BEGINS TO EMERGE

38. On August 27, 2024, before the market opened, Hindenburg Research ("Hindenburg") released a report entitled "Super Micro: Fresh Evidence Of Accounting Manipulation, Sibling Self-Dealing And Sanctions Evasion At This AI High Flyer" (the "Hindenburg Report" or the "Report").

39. The Hindenburg Report made a number of allegations regarding the Company's business, operations, and prospects. More specifically, the Report alleged that the Company had been improperly recognizing revenue, and that it had failed to disclose related-party transactions.

40. Years ago, in August 2020, the Company was charged by the SEC for widespread accounting violations leading to over $200,000,000 in improperly recognized revenue. The Company was ultimately forced to pay $17.5 million to the SEC to settle the claims.

41. The SEC found that the Company had "improperly accelerated revenue recognition and reporting" by manipulating product shipment logistics, dates, and terms in an effort to book the revenues from product shipments earlier than they should have been under Generally Accepted Accounting Principles ("GAAP").

42. The fallout from the SEC charges led the Company to fire a number of executives and key personnel involved the scandal. However, these employees did not stay fired for long.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

43. The Hindenburg Report revealed that, rather than committing to abide by the law and foster transparency in the wake of the SEC investigation, the Company instead returned to its old ways just a few months later.

44. Per the Report, over the next few years, the Company steadily rehired employees that it had initially let go for their involvement in the revenue recognition scandal, and likewise returned to its previous improper revenue recognition practices.

45. Among the rehires are Wally Liaw and Phidias Chou, both of whom sat on the Company's Board of Directors before their resignation during the accounting scandal, and Salim Fedel, the former Vice President of Sales.

46. The Report quotes a former senior salesperson at the Company as saying, in relation to the rehired executives, that "[a]lmost all of them are back. Almost all of the people that were let go that were the cause of this malfeasance."

47. The Report cites a lawsuit brought by the Company's former Head of Global Services, Bob Luong, and writes that the complaint specifically alleges, among other issues, that:

- Revenue was incorrectly allocated to hardware sales rather than service, in the quarter ending December 2020, to artificially boost reported profit margins.
- Revenue was prematurely booked even when equipment could not be delivered to and installed for customers.
- Revenue was prematurely booked even when products were faulty or not ready for sale.

48. The authors of the Hindenburg Report independently corroborated the Luong lawsuit's allegations of improper revenue recognition and inadequate financial controls, interviewing a former salesperson who informed them that "salespeople worked with distributors of Super Micro, including Avnet and Tech Data to over-ship product to boost numbers, in what appeared to be a channel stuffing scheme."

49. "Channel stuffing" is a deceptive revenue reporting practice whereby companies inflate sales through over-shipping and over-invoicing products to distributors or customers who may not have ordered, needed, or been able to sell the products.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

50. In all, the Report alleges that the Company continued to engage in channel-stuffing after being charged by the SEC for doing so.

51. This improper and illegal revenue recognition practice evidences a lack of effective internal controls over financial reporting.

52. Separately and in addition to the information about the Company's illegal revenue recognition practices, the Report revealed that the Company has also been engaging in undisclosed related party transactions. The Report states, in pertinent part:

> In addition to the concerns around the disclosed related parties, we found evidence of undisclosed related parties. The youngest brother of Super Micro's CEO owns two Taiwan-based entities that make server components. Media reports and former employees indicate the entities are Super Micro suppliers.
> Both entities operate out of the Super Micro Science and Technology Park in Taiwan, but Super Micro has not disclosed related party transactions with them.
> Another brother of Super Micro's CEO operates a disclosed related party but is also the director and shareholder of undisclosed Hong Kong and Taiwanese entities, which appear to resell Super Micro products and provide "professional OEM services." It operates out of the same building as related party Compuware.
> In addition to the CEO's brothers, the company has an odd relationship with a key customer. In February 2024, Super Micro made an undisclosed investment in tech startup Lambda Labs as part of its $320 million funding round, per Bloomberg and per a confirmation we received from Lambda's COO.
> In October 2023, two related parties run by CEO Liang's brothers, one of them partially owned by Super Micro's CEO, reportedly invested in small Taiwanese tech company Leadtek. Leadtek's website advertises products almost identical to Super Micro's, yet Super Micro discloses no relationship with Leadtek in what appears to be a clear undisclosed related party.

53. In sum, the Report alleges that the Company consistently fails to report related party transactions and investments, and displays a pattern of disregard for their duty to do so.

54. On this news, the price of SMCI common stock declined by $14.87, or 2.6%, to close at $547.64 per share on August 27, 2024.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

55. The next day, amid the concerns raised by the Report, SMCI issued an 8-K stating that it "expects to file a Notification of Late Filing on Form 12b-25 on August 30, 2024 with respect to its Annual Report on Form 10-K for the fiscal year ended June 30, 2024."

56. The market took the release of this 8-K to be some confirmation that the allegations in the Hindenburg Report were accurate.

57. One analyst on Seeking Alpha, Henrik Alex, wrote that:

> At least in my opinion, the delay has likely been caused by Tuesday's damning report released by high-profile short-seller outfit Hindenburg Research which contained a plethora of allegations with regard to the company's accounting practices.

58. SMCI stock continued to tumble as a result of this news, dropping by $104.35, or 19.05%, to close at $443.29 per share on August 28, 2024.

59. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## CLASS ACTION ALLEGATIONS

60. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired the Company's securities publicly traded on the NADSAQ during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

61. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

62. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

63. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

64. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act was violated by Defendants' acts as alleged herein;
- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and financial condition of the Company;
- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;
- whether the Defendants caused the Company to issue false and misleading filings during the Class Period;
- whether Defendants acted knowingly or recklessly in issuing false filings;
- whether the prices of the Company securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and
- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

65. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

66. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- the Company's shares met the requirements for listing, and were listed and actively traded on the NASDAQ, an efficient market;
- as a public issuer, the Company filed periodic public reports;
- the Company regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;
- the Company's securities were liquid and traded with moderate to heavy volume during the Class Period; and
- the Company was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

67. Based on the foregoing, the market for the Company's securities promptly digested current information regarding the Company from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

68. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

**FIRST CLAIM**
**For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder**
**Against All Defendants**

69. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

70. This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

71. During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

72. Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

   i. employed devices, schemes and artifices to defraud;
   ii. made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
   iii. engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

73. Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

74. Individual Defendants, who are the senior officers of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or any other of the Company's personnel to members of the investing public, including Plaintiff and the Class.

75. As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in purchasing the Company's securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

76. Had Plaintiff and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

77. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

78. By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of the Company's securities during the Class Period. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

**SECOND CLAIM**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

79. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

80. During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information about the Company's business practices.

81. As officers of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's' financial condition and

results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

82. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period concerning the Company's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

83. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

A. Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

B. Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C. Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D. Such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

| | |
|---|---|
| Dated: August 30, 2024 | Respectfully submitted, |
| | **THE ROSEN LAW FIRM, P.A.** |
| | /s/Laurence M. Rosen |
| | Laurence M. Rosen, Esq. (SBN 219683) |
| | 355 S. Grand Avenue, Suite 2450 |
| | Los Angeles, CA 90071 |
| | Telephone: (213) 785-2610 |
| | Facsimile: (213) 226-4684 |
| | Email: lrosen@rosenlegal.com |
| | |
| | *Counsel for Plaintiff* |